IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CYNTHIA N. SEXTON,
    Plaintiff,

v.                                Case No: 5:09cv29/SPM/MD

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.

_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Sexton's application for a period of disability and disability insurance benefits under Title II of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

## PROCEDURAL HISTORY

On August 10, 2004 plaintiff, Cynthia Sexton, filed an application for benefits claiming an onset of disability as of July 1, 1996. The application was denied initially and on reconsideration, and Ms. Sexton requested a hearing before an administrative law judge (ALJ). A hearing was held on October 24, 2007 at which Ms. Sexton was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 18-23) and Ms. Sexton requested review by the Appeals Council without submitting additional evidence. The Appeals Council declined review (tr. 7-9). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Sexton had not worked since her claimed onset date; that she had severe conditions of carpal tunnel syndrome and diabetes but did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C. F. R. Part 404, Subpart P; that had the residual functional capacity to do the full range of light work; that she could perform the duties of her prior relevant work as a cleaner/housekeeper and cafeteria attendant; and that during the relevant period she was not under a disability as defined in the Act..

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate

legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both Supplemental Security Income (SSI) and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

As noted above, Ms. Sexton's application was filed in 2004, but she claimed an onset of disability as of more than eight years earlier. She had not engaged in substantial gainful employment since her claimed onset date, and because she was not working, the ALJ found that her date last insured was September 30, 1998, meaning that her eligibility for insured status and disability benefits expired as of that date (tr. 18).[1] Ms. Sexton does not contest this finding or its effect on her eligibility (doc. 17, p. 3). Therefore, the relevant period for consideration is from July 1, 1996 through September 30, 1998. There are only a few entries in the medical records during the relevant period, and those records will be discussed here.

In early 1994 Ms. Sexton was diagnosed with carpal tunnel syndrome, and on February 3, 1994 underwent right carpal tunnel release (tr. 492). At follow-up four days later she indicated that she had felt little relief (tr. 578), but the medical record is silent concerning her carpal tunnel syndrome until three years later, when on May 1, 1997 Ms. Sexton reported that there was a lump growing on her right wrist that had been present for a month. An x-ray showed only a prominent mass (tr. 444). Ms. Sexton complained of pain in her wrist on May 7, 1997 (tr 407, 429-30), and on June 30, 1997 an ultrasound noted a probable ganglion cyst (tr. 442). She was noted to have a mass in her right wrist in September 1997 and a biopsy disclosed a large amount of synovial fluid in the wrist with a necrotic area, which was removed (tr. 391, 422).

A year later Ms. Sexton complained of wrist pain (tr. 771). An x-ray showed widening of the right ulnar joint (tr. 462). A September 16, 1998 nerve conduction study of the Ms. Sexton's wrist showed normal muscle function but inflamed nerves described by the examining neurophysiologist as follows:

---

[1] The ALJ erroneously stated that Ms. Sexton's date last insured was September 1, 1996, but counsel for both parties agree that the correct date was September 30, 1996 (doc. 17, p. 3; doc. 24, p. 2). *See also* tr. 94 (showing that the date last insured was 9/30/98).

*Case No: 5:09cv29/SPM/MD*

> **EMG: (1)** Essentially normal study of the bilateral abductor pollicis brevis muscles.
>
> **INTERPRETATION:**
> The nerve conduction velocity study is indicative of a mononeuritis multiplex seemingly axonal in character.  This may well have superimposed carpal tunnel entrapments bilaterally given the focal slowing in conduction velocity in the palm-wrist segments compared to the more distal finger-palm segments.  Correlation with clinical presentation would, however, be suggested in that point.  The needle examination does not suggest the presence of a significant axonal injury involving either distal median motor component at this point.

(Tr. 384).  That same month Ms. Sexton complained of pain with numbness and tingling in her fingers with positive Phalen's and Tinel's signs (tr. 410).  On September 28, 1998 an ultrasound examination revealed "likely solid lesions" in her wrist.  The next entry in the medical record is dated 2004, nearly six years later, when Ms. Sexton continued to complain of pain in her right wrist and hand.

## DISCUSSION

Ms. Sexton argues that the ALJ erred in failing to consider her limitations from her carpal tunnel syndrome, and in erroneously finding that she could do light work.  She contends that she was disabled from her onset date as a matter of law, or that the ALJ should be required to reconsider his determination.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that Ms. Sexton was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

The ALJ outlined what little information existed in the medical record for the relevant time.  She then found as follows concerning Ms. Sexton's carpal tunnel syndrome:

> The claimant did undergo a right carpal tunnel release and also suffered from a soft tissue mass in her wrist. However, the mass was removed and not considered cancerous, and the pain was treated with Tylenol. The claimant also did well after her carpal tunnel release with an EMG revealing a normal study of the bilateral abductor pollicis brevis muscles. Needle examination findings also did not suggest the presence of a significant axonal injury involving either the distal or median motor component.

(Tr. 22). The foregoing is the entirety of the ALJ's discussion of Ms. Sexton's carpal tunnel problems. Based on this finding the ALJ determined that Ms. Sexton was capable of doing the full range of light work. However, the ALJ's stated reason was not supported by substantial record evidence because it was not entirely correct in two relevant particulars. First, Ms. Sexton was not treated with ordinary Tylenol, she was treated with Tylenol #3, which is a narcotic analgesic containing codeine, a narcotic. Second, the ALJ omitted the part of the September 1998 nerve conduction underlined below:

> <u>The nerve conduction velocity study is indicative of a mononeuritis multiplex seemingly axonal in character. This may well have superimposed carpal tunnel entrapments bilaterally given the focal slowing in conduction velocity in the palm-wrist segments compared to the more distal finger-palm segments. Correlation with clinical presentation would, however, be suggested in that point.</u> The needle examination does not suggest the presence of a significant axonal injury involving either distal median motor component at this point.

This seems to indicated that there was a lingering problem with Ms. Sexton's carpal tunnel syndrome, and saying that Ms. Sexton "did well" after the carpal tunnel release ignores what appears above. The study may indicate that Ms. Sexton's forearm and wrist muscles were working but her nerves were somehow compromised, possibly causing the pain of which she complained. However, it is not for this court to interpret the medical record in this instance. That duty is assigned to the ALJ. The ALJ must address the entire nerve conduction velocity study, including the part that shows a possible problem, and the ALJ must consider

the medication actually prescribed. If the underlined portion of the examination report is unclear, the ALJ has the duty to find out what it means, and then explain it in terms that permit appropriate review by this court.

This court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." Title 42 U.S.C. § 405(g). Remand is ordinarily appropriate for rehearing if the Commissioner failed to apply the law and regulations, or where the taking of additional evidence is necessary. Further review by the ALJ is necessary in this case. The undersigned is not suggesting that Ms. Sexton is entitled to the award of benefits, only that the ALJ must consider all the evidence and better explain her reasoning. If additional evidence is required, that should be obtained.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405 (g), that judgment be entered in favor of plaintiff, and that the clerk be directed to close the file.

At Pensacola, Florida this 23rd day of February, 2010.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**

*Case No: 5:09cv29/SPM/MD*